**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF MARYLAND**
(Greenbelt Division)

| | | |
|---|---|---|
| IN RE: | * | |
| | * | |
| TATIANA RODRIGUEZ | * | Case No. 10-33460-WIL |
| | * | Chapter 7 |
| Debtor | * | |
| | * | |

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

MOTION TO RESOLVE (1) MONETARY CLAIMS
AND (2) OBJECTION TO DEBTOR'S EXEMPTIONS

COMES NOW MICHAEL G. WOLFF (the "Trustee"), the Chapter 7 Trustee for the

Bankruptcy Estate of Tatiana Rodriguez (the "Debtor") and pursuant to Bankruptcy Rule

9019(a), files this Motion seeking approval of a proposed resolution of the monetary claims that

the Trustee and the Debtor assert against Southern Insulation, Inc. ("Southern"), Grunley

Construction Co., Inc. ("Grunley"), and Welsh and Rushe, Inc. ("Welsh") (collectively

"Defendants").  In addition, the Trustee is seeking approval of a resolution of his objection to the

Debtor's claimed exemptions as they relate to the Debtor's claims against the Defendants.  In

support of his Motion, the Trustee states as follows:

1.      On October 13, 2010 (the "Petition Date"), the Debtor filed her Voluntary Petition

for Relief under Chapter 7 of the Bankruptcy Code.

2.      The same day, the Debtor filed her Schedules and Statement of Financial Affairs.

3.      The Debtor's Schedules were unremarkable in that they reflected her ownership

interest in real property that had a fair market value that was less than the amount of the liens

encumbering the property and reflected her ownership of personal property having a combined

value of less than $2,000.00.

4.      The Debtor's Schedules did not reflect that anyone owed her any money or that

she asserted claims against any person or entity.

5.      The Debtor's Section 341 meeting was scheduled for and conducted on November

17, 2010.

6.    At her Section 341 meeting, the Debtor verified the accuracy of her Schedules and SOFA and specifically denied that she maintained any claims against any person or entity.

7.    Based upon the information contained in the Debtor's Schedules, and based upon the Debtor's testimony at her Section 341 meeting, the Trustee filed a Report of No Distribution.

8.    On January 20, 2011, the Debtor was granted her discharge and on September 1, 2011, the Debtor's case was closed.

9.    As the Trustee later learned, the Debtor's Schedules and SOFA were not accurate.

10.    Prior to the filing of her Bankruptcy case, on June 17, 2009, the Debtor was injured in the basement of a building located at 725 17th Street, NW, Washington, DC 20006 (the "Building").

11.    The Debtor was injured when she tripped and fell in the Building while on the job as an employee of Southern.

12.    Because she was injured while on the job, the Debtor asserted worker's compensation claims and received a settlement that, among other things, was intended to cover her lost wages and medical expenses related to her injuries.

13.    While the Debtor was hurt "on the job," the Debtor asserted that her injuries were caused by a third-party, Grunley.

14.    In order to pursue her claims against Grunley, the Debtor filed a Complaint in the Superior Court for the District of Columbia in the case captioned Tatiana Rodriguez v. Grunley Construction Co., Inc., C.A. No. 2012 CA 004896 B (the "Litigation").

15.    In the course of the Litigation, Southern and Welsh were added as additional parties.

16.    In the course of the Litigation, the Defendants learned that the Debtor had previously filed this Bankruptcy case and that the Debtor had failed to schedule her claims against Defendants in her Schedule B.

17.    At that point, the Defendants sought to bar the Debtor from pursuing her claims. Defendants argued that, as a result of her Bankruptcy filing and as a result of having failed to list

2

her claims on her Schedule B, the Debtor's claim remained property of her bankruptcy estate and, for that reason, the Debtor did not have standing to pursue the claims in the Litigation. In addition, the Defendants argued that, as a result of the Debtor's dishonesty in failing to schedule her claims, the Debtor was judicially estopped from pursuing her claims in the Litigation.

18.     While raising these arguments, Defendants never contacted the Trustee or the Court to advise of the existence of the Debtor's claims.

19.     After substantial delay, and after recognizing that her ability to recover on her claims in the Litigation was in jeopardy, the Debtor, through bankruptcy counsel, advised the Trustee of the existence of the Litigation and the general nature of the claims that the Debtor had asserted in the Litigation.[1]

20.     On October 17, 2013, having learned of the existence of the Litigation, the Trustee filed a Motion to Reopen the Debtor's Bankruptcy case.

21.     By Order entered November 5, 2013, the Court granted the Trustee's motion and the Debtor's Bankruptcy case was reopened.

22.     On November 6, 2013, the Trustee was reappointed to serve as the Chapter 7 Trustee in the re-opened Bankruptcy Case.

23.     On November 13, 2013, the Trustee withdrew his Report of No Distribution.

24.     Also on November 13, 2013, the Trustee requested that the Court establish a bar date for the Debtor's creditors to file claims against the Debtor's estate.

25.     That same day, the Court sent notices to creditors advising that February 11, 2014, was the last day for creditors to file timely Proofs of Claim in the Debtor's Bankruptcy case.

26.     On November 19, 2013, the Debtor filed her Amended Schedules.

27.     In her Amended Schedule B-21, the Debtor listed the following assets:

---

[1]     The Debtor's Bankruptcy counsel had not acted as her Bankruptcy counsel prior to the time that her Bankruptcy Case was originally closed.

| Description | Current Value |
|---|---|
| Worker's Compensation claim | $436,445.29 |
| Negligence claim against general contractor on construction site where debtor was injured (the "Claims") | Unknown |

28.     In her Amended Schedule C, the Debtor claimed the following exemptions:

| Description of Property | Specify Law Providing Each Exemption | Value of Claimed Exemption | Current Value of Property Without Deducting Exemption |
|---|---|---|---|
| Worker's compensation claim | Md. Code Ann., Cts. & Jud. Proc. § 11-504 (b)(2) | $436,445.29 | $436,445.29 |
| Negligence claim against general contractor on construction site where debtor was injured | Md. Code Ann., Cts. & Jud. Proc § 11-504 (b)(2) | 100% | Unknown. |

29.     On December 4, 2013, the Trustee filed an Objection to the Debtor's Claim of Exemptions (the "Exemption Objection").

30.     In the Exemption Objection, the Trustee argued that:

A.     The Debtor could not amend her Schedule C to seek to exempt any part of the Claims because Bankruptcy Rule 1009(a) only allowed amendments to be made prior to the closing of the Debtor's Bankruptcy case;

B.     The Debtor was precluded from seeking an exemption in the Claims due to her bad faith; and

C.     Even if the Debtor was entitled to claim an exemption in the Claims, the exemption was limited to the amounts recovered for the amounts that are attributable to her personal injuries themselves and not the amounts that are recovered as reimbursement for items such as lost wages or unpaid medical expenses related to the identification or treatment of the personal injury.

4

31.     On January 2, 2014, the Debtor filed her response to the Trustee's Exemption Objection and the Court scheduled a hearing for February 26, 2014.

32.     During this period, and continuing through February of 2014, the parties engaged in discussions in an attempt to reach a global settlement of the Claims and the Exemption Objection.

33.     As a result of those negotiations, the parties reached an agreement for the resolution of both the Claims and the Exemptions Objection and advised the Court of the settlement on February 26, 2014.

34.     Subject to notice to parties in interest, their opportunity to object, and the Court's review of the same, the Trustee, the Debtor and the Defendants have resolved the Claims and the Exemption Objection on the following substantive terms:

A.     The Defendants shall pay the total sum of One Hundred Nine Thousand Five Hundred and No/Dollars ($109,500.00) (the "Settlement Amount") broken down as follows:

1.     $46,500.00 from Southern by and through its insurer;

2.     $26,500.00 from Grunley by and through its insurer; and

3.     $36,500.00 from Welsh by or through its insurer.

B.     From the Settlement Amount, the Debtor shall carve out the sum of Twenty-Nine Thousand Dollars ($29,000.00) to her Bankruptcy estate (the "Estate's Recovery") and shall retain the sum of Eighty Thousand Five Hundred Dollars ($80,500.00) (the "Debtor's Recovery").

C.     The Debtor's Recovery shall be subject to the contractual claims of the Debtor's personal injury attorney, but shall not be subject to any claims by the Debtor's estate.

D.     The Estate's Recovery shall be free of any claim of exemption by the Debtor and shall not be subject to the contractual claims of the Debtor's personal injury attorney. The Estate's Recovery shall be subject only to the allowed administrative claims of the Bankruptcy estate and the allowed unsecured claim in the priority established by the Bankruptcy Code. For that reason, the settlement will resolve the Exemption Objection.

E.     The Settlement Amount shall be paid by the Defendants within thirty (30) days of the later of (a) the execution of the parties' Settlement Agreement and Mutual Global Release of All Claims (the "Agreement") and (b) the entry of an Order from this Court approving this Motion.

F.     In consideration of the receipt of the Estate's Amount, the Trustee, on behalf of the Debtor's estate, shall provide a release of the Debtor's estate's claims against the Defendants as those claims are asserted in the Litigation and as if the Trustee was a party to the Litigation.

35.     The terms of the settlement are set out in more detail in the parties Settlement Agreement and Mutual Global General Release of All Claims (the "Agreement"), a copy of which is attached hereto as **Exhibit 1**.

36.     Under Fed. R. Bank. P. 9019, approval of a proposed compromise of controversy may be given when the compromise is: (a) fair and equitable; (b) in the best interests of the estate and the creditors; and (c) surpasses the lowest level within a range of reasonableness.  In re Apex Oil Co., 92 BR. 847, 867 (Bank. E.D. Mo. 1988); In re A & C Properties, 784 F.2d 1377, 1381 (9th Cir) cert. denied 479 U.S. 854 (1986); In re Jackson Brewing Co., 624 F.2d 599, 602 (5th Cir 1980).

37.     The Trustee believes this settlement to be in the best interests of the estate and all creditors because:

A.     The total amount of timely filed unsecured claims filed in the Debtor's Bankruptcy case is only $15,987.32.  After payment of such administrative expenses as may be allowed by the Court, the settlement will result in a substantial distribution on account of those timely filed unsecured claims;

B.     The settlement will mean that the estate will not have to spend any additional time or money to collect property of the estate or to liquidate assets that are property of the estate; and

C.     Regardless of the Trustee's confidence in his ability to avoid the Debtor's claimed exemptions, litigation is never a sure thing and there is no guaranty that the Trustee would succeed in his objection and, more importantly, that he would prevail in the substantive claims against the Defendants.

WHEREFORE, the Trustee respectfully requests this Court to enter an Order:

A.     Approving the Trustee's settlement of his claims against the Defendants under the terms and conditions set out in this Motion;

B.     Approving the Trustee's settlement of the Exemption Objection on the terms and conditions set out in this Motion; and

C.     Granting such other and further relief as the nature of this cause may require.

Respectfully submitted,


\s\ Jeffrey M. Orenstein
JEFFREY M. ORENSTEIN (#07512)
Goren, Wolff & Orenstein, LLC
Shady Grove Plaza
15245 Shady Grove Road, Suite 465
Rockville, Maryland  20850
(301) 984-6266
jorenstein@gwolaw.com

Counsel for Michael G. Wolff, Trustee


## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 7th day of March, 2014, a copy of the foregoing was sent via first class mail, postage pre-paid or, if so indicated on the ECF receipt, via electronic mail, to: Alan Eisler, Esq., Meyers Eisler LLC, 3206 Tower Oaks Boulevard, Fourth Floor, Rockville, Maryland 20852; and Office of the U.S. Trustee, 6305 Ivy Lane, #600, Greenbelt, MD 20770.

/s/Jeffrey M. Orenstein
Jeffrey M. Orenstein

7